# EXHIBIT 1

**CENTER FOR HUMAN RIGHTS**
UNIVERSITY of WASHINGTON
Henry M. Jackson School
of International Studies

Freedom of Information Act Request
U.S. Immigration and Customs Enforcement
500 12th Street SW, Stop 5009
Washington, DC 20536-5009

July 30, 2024

To Whom It May Concern:

This is a request under the Freedom of Information Act, 5 U.S.C. Sec. 552 ("FOIA"), on behalf of the University of Washington Center for Human Rights, for information regarding U.S. Immigration and Customs Enforcement agency ("ICE") and Department of Homeland Security ("DHS") operations.

**Purpose of Request**
The purpose of this request is to provide the public with information regarding the practices and procedures relating to apprehension, arrest and/or seizure, detention and/or custody, racial profiling, and collaborations with state and local law enforcement in the context of federal immigration enforcement in the Pacific Northwest. These enforcement practices challenge core provisions of the U.S. Constitution which apply to all residents of our region, regardless of citizenship, and are central to contemporary debates on immigration enforcement and reform. There is, therefore, an urgent need for the public to understand and review the practices of the federal government in our region in order to ensure that the safeguards embedded in federal and state law are respected to protect the rights of all.

This information will enable the Center to fulfill its legislatively-mandated mission of educating the public about the human rights implications of government policy and practice, in particular as regards immigrant rights[1].

Specifically, we request three types of documents:

---

[1] In 2009, the Washington state legislature established the University of Washington Center for Human Rights, tasking it with the mission "to expand opportunities for Washington residents to receive a world-class education in human rights, generate research data and expert knowledge to enhance public and private policymaking, and become an academic center for human rights teaching and research in the nation." This legislation also stipulates, "Key substantive issues for the center include: The rights of all persons to security against violence; the rights of immigrants, native Americans, and ethnic or religious minorities; human rights and the environment; health as a human right; human rights and trade; the human rights of working people; and women's rights as human rights." See RCW 28B.20.478

BOX 353650   SEATTLE, WA 98195-3650
206.685.3435   UWCHR@UW.EDU
HUMANRIGHTS.WASHINGTON.EDU

Exhibit 1_001

**CENTER FOR HUMAN RIGHTS**
UNIVERSITY of WASHINGTON
Henry M. Jackson School
of International Studies

1. I-213 forms for the Seattle Area of Responsibility
2. Significant Incident Reports, or Significant Event Notifications, for the Seattle Area of Responsibility
3. Logs recording the use of segregation in ICE detention in the Seattle Area of Responsibility

As part of our work fulfilling our legislative mandate, UWCHR has developed significant expertise in the obtention and analysis of U.S. government documents to shed light on rights abuses committed at home and overseas. As part of this work, our research team has filed hundreds of Freedom of Information Act (FOIA) requests of federal government agencies, including the Departments of State, Defense, and Homeland Security, and the Central Intelligence and Defense Intelligence Agencies, obtaining thousands of pages of records. Lamentably, our research on the rights of immigrants has been hampered by DHS' record of poor adherence to the requirements of FOIA.

For this reason, we ask that the Department of Homeland Security proactively disclose three classes of records named above – and discussed below – as required under the FOIA Improvement Act of 2016, which expanded the requirement for agencies to make certain records publicly available without waiting for specific requests. Section 552(a)(2) of FOIA, known as the "proactive disclosure" or "reading room" provision, "identifies certain categories of records the agency must make available *on an ongoing basis*, no request necessary." (emphasis added); Animal Legal Def. Fund v. USDA, 935 F.3d 858, 862 (9th Cir. 2019). Four specific categories of records are identified in this section[2], the fourth of which is "all records, regardless of form or format— (i) that have been released to any person under paragraph (3); and (ii) (I) that because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records; or (II) that have been requested 3 or more times." 5 U.S.C. § 552(a)(2)(D); see FOIA Improvement Act of 2016, Pub. L. No. 114-185, 130 Stat.538 (2016); see also the DOJ's Office of Information Policy Summary of the FOIA Improvement Act of 2016 (posted 8/17/2016), which notes that 2016 amendments codified "rule of three").

We ask that DHS/ICE comply with this portion of the law by posting copies of these records – with unique identifiers to replace personally-identifying information – on a monthly basis in ICE's online FOIA reading room and to be sent directly to the University of Washington Center for Human Rights on a monthly basis.

Below, we explain why the requirement of proactive disclosure applies to each of the three types of documents we are seeking under the "rule of three."

---

[2] See also the US Department of Justice's Office of Information Policy on this matter here.

**CENTER FOR HUMAN RIGHTS**
UNIVERSITY of WASHINGTON
Henry M. Jackson School
of International Studies

**1) Forms I-213**

**We request the monthly release of digital copies of all <u>draft, unsigned</u> I-213 "Record of Deportable/Inadmissible Alien" forms, with corresponding I-247 "Continuation Form", for a. Each individual detained or taken into custody by staff from ICE's Seattle Field Office and all sub-offices; b. Each individual transferred to the custody of staff from ICE's Seattle Field Office and all sub-offices by CBP, Border Patrol, or by state or local law enforcement officials, in ICE's Seattle Area of Responsibility for the time period beginning December 1, 2021. We do not object to redaction of any personally-identifiable information including name, date of birth, A#, U.S. address, etc.**

a) **Research impact** of access to these documents:

I-213 data provides the most accurate known representation of ICE and Border Patrol arrests in the Seattle Area of Responsibility, including the only known source for precise arrest locations and detailed arrest narratives. UWCHR has used this data in the past in multiple ways:

- We have used it to [quantify and map immigration arrests](#) by city and county across the Seattle Area of Responsibility, including units of analysis such as the ICE or Border Patrol field office or sector responsible for the arrest, method of apprehension, and demographics of arrested individuals. We have used the narrative data included in these forms to [identify specific enforcement practices that may violate Washington state](#) laws governing collaboration and information-sharing with ICE by local and state agencies; as well as to document trends in federal immigration enforcement practices affecting Washington state residents.

- We have shared specific subsets of the I-213s obtained with public interest attorneys who have used them in successful litigation against local jurisdictions failing to comply with the requirements of Oregon's Sanctuary Promise Act[3]; with the office of the Attorney General of the State of Washington, which used them in successful litigation against Greyhound Bus Lines for violating the rights of customers in Washington state[4], and with immigrant rights

---

[3] See Case No. 23CV07691, in Oregon Circuit Court in Lane County, in which a judge issued a permanent injunction on January 24, 2024, forbidding the City of Cottage Grove from engaging in numerous practices which violate Oregon's Sanctuary Promise Act; advocates are currently considering similar litigation against other jurisdictions in the state, based in part on our research.
[4] Michael Levenson, "[Greyhound Agrees to Pay $2.2 Million Over Immigration Sweeps on Buses](#)," *The New York Times,* September 29, 2021

3
BOX 353650   SEATTLE, WA 98195-3650
206.685.3435   UWCHR@UW.EDU
HUMANRIGHTS.WASHINGTON.EDU

Exhibit 1_003

**CENTER FOR HUMAN RIGHTS**
UNIVERSITY of WASHINGTON
Henry M. Jackson School
of International Studies

advocates engaged in conversations with local jurisdictions who were systematically engaging in violations of Washington state law by unlawfully assisting ICE or CBP in civil immigration enforcement.[5]

b) **Why proactive disclosure applies:** These documents have been requested many times by the UWCHR as well as other parties. In more than one occasion, these documents have been released.

UWCHR has requested batch collections of I-213s three times:

1. In October 2017, UWCHR requested I-213s from the Seattle Area of Responsibility from 2012 to the present in 2018-ICFO-14208; ICE issued a "no documents" response, alleging that the documents were exempt from release under law enforcement exemptions; UWCHR filed an administrative appeal, and eventually brought suit in 2018; thousands of pages of documents were released in installments from 2020-2021.
2. In December 2021, UWCHR filed FOIA request # 2022-ICFO-02878, requesting copies of draft, unsigned I-213s from the Seattle Area of Responsibility; after litigation, thousands of pages were released in 2023.
3. In May 2024, UW filed FOIA request # 2024-ICFO-35467, again requesting copies of draft, unsigned I-213s from the Seattle Area of Responsibility; ICE issued a request for clarification, stating that copies of final, signed I-213s were stored in individual A-files; UWCHR responded immediately issuing the clarification that, as stipulated in the original request, we were seeking draft, unsigned I-213s, not final documents from A-files; one month later, ICE administratively closed UWCHR's request due to "failure to respond" to the request for clarification; when UWCHR Director objected to the administrative closure, resending the clarification provided, ICE responded, "ICE FOIA did receive your response to our request for clarification on 5/10/2024, but as stated, your response was not a proper clarification and was deemed to be an improper request. Your request remains administratively closed." The letter did not provide UWCHR information about an opportunity to appeal this closure. On June 12, 2024 UWCHR Director asked OGIS' help in resolving this dispute; on July 2, 2024 OGIS responded, suggesting that UWCHR could still appeal the closure. On July 3, 2024 UWCHR appealed the improper closure of this request; the appeal is pending.

However, the UWCHR is not the only party who has filed FOIA requests for batches of I-213s. We are aware of at least 17 other such requests filed by other parties since 2014, two of which were settled through litigation resulting in the release of large, date-delimited batches of all I-

---

[5] Report forthcoming.

CENTER FOR HUMAN RIGHTS
UNIVERSITY of WASHINGTON
Henry M. Jackson School
of International Studies

213s issued in a particular ICE AOR, similar to the two settlements noted above in cases brought by UWCHR. The cases include:

1. 2024-ICFO-00108, filed by Churchill Ndonwie of Columbia University, seeks I-213s from all southwest border apprehensions from 2018-2023.
2. 2023-ICFO-16106, filed by Kira Olsen-Medina of Cornell University, seeks all form I-213 records completed by U.S. Border Patrol agents assigned to a range of southern border sectors from 2019-2022.
3. 2023-ICFO-06543, filed by Daniel Melo of the North Carolina Justice Center, seeks copies of all Form I-213s prepared in a North Carolina sub-office of ICE's Atlanta Field Office, from 2018 to the present.
4. 2022-ICFO-01759, and separately, 2020-ICFO-72513, both filed by Elsa Goosen of the ACLU of New Mexico, seek all copies of DHS Form I-213 prepared in the Area of Responsibility of New Mexico during two different date ranges.
5. 2022-ICFO-05011, Prepared by Michael Kaplan, seeks all copies of I-213 forms filled by ICE Miami Field Office from 2019-2021.
6. 2021-ICFO-02565, prepared by Ethan Varian of Sonoma Media Investments, seeks any and all I-213s for all apprehensions made by ICE in Sonoma County, California from August- September 2020.
7. 2019-ICFO-51663, filed by Vanessa Stine of the ACLU of Pennsylvania, sought the release of copies of all Form I-213s ("Record of Deportable/Inadmissible Alien") prepared by any agent or employee under the supervision of the Philadelphia Field Office from 2017-2019; this case was litigated in federal district court, resulting in a settlement in favor of the plaintiffs and the release of thousands of pages of documents.[6]
8. 2017-ICFO-39439 and CBP-2021-041934, both filed by Advocates for Basic Legal Equality, sought records relating to the practices of ICE and CBP in Ohio, including I-213s; this case was litigated as No. 22-CV-00149 in the Northern District of Ohio, resulting in a settlement in favor of the plaintiffs and the release of the I-213s requested.
9. 2018-ICFO-25132, filed by Andrew Erickson, seeks all I-213s arising from the Municipality of Anchorage in 2017.
10. 2018-ICFO-25015, filed by Leah Montagne of the University of Toronto, sought copies of I-213s for each individual detained or taken into custody by staff from ICE's Portland, Oregon, field office since 2015.

---

[6] See https://www.aclupa.org/sites/default/files/field_documents/50_stip_and_dismissal.pdf.

5
BOX 353650   SEATTLE, WA 98195-3650
206.685.3435   UWCHR@UW.EDU
HUMANRIGHTS.WASHINGTON.EDU

Exhibit 1_005

CENTER FOR HUMAN RIGHTS
UNIVERSITY of WASHINGTON
Henry M. Jackson School
of International Studies

11. 2017-ICFO-40912 filed by the Houston Media Group sought portions from all form I-213s collected in the Enforcement Integrated Database for apprehensions in 2017.
12. 2017-ICFO-33823, also filed by the Houston Media Group, sought all I-213s from a specific date range for the Houston, San Antonio, Dallas, and El Paso AORs.
13. 2017-ICFO-25628, filed by the Arkansas Democrat-Gazette, copies of all forms I-213 for apprehensions in Arkansas in February 2017.
14. 2017-ICFO-26581, filed by Caitlin Dickerson of the New York Times, sought I-213s for all individuals apprehended from January 20, 2017 to the date of filing 6 months later.

**2) Significant Incident Reports (also known as Significant Event Notifications)**

**We request the monthly release of all Significant Incident Reports filed using the electronic Significant Event Notification (SEN) system in ICE's Seattle Area of Responsibility beginning January 1, 2023.**

    a) **Research impact** of access to these documents:

Per DHS policy, incident reports must be filed through the agency's significant event notification system under certain circumstances, including any time force is used in the conduct of an agency officer's duties, or at a facility run operated by a private company under agency contract; any time a hunger strike, a suicide attempt, death or a serious injury occurs at a facility run by or for the agency; any time an act of alleged sexual abuse is reported; and any time a detainee is taken to receive outside medical care. Obtaining these documents constitutes one of the only ways researchers are able to glimpse inside the black box of ICE detention.

For UWCHR researchers, SIRs/SENs have proven essential tools in corroborating human rights conditions inside the Northwest Detention Center in Tacoma, providing the backbone for multiple published UWCHR reports on conditions at this facility, including Allegations of Medical Neglect (April 2020), Use of Solitary Confinement (November 2020) , Covid-19 and Health Standards (December 2020), Reporting of Sexual Abuse and Assault (May 2022) Use of Force and Chemical Agents (August 2023). This work has been presented to the Washington state legislature in its consideration of the three recent laws it has passed in an attempt to address these concerns, namely HB 2596 (2020) calling for a study to examine the feasibility of local government exercising oversight of health and safety at the facility; HB 1090 (2021) mandating the closure of private detention centers including the NWDC, in large part due to concerns about conditions; HB 1470 (2023) mandating improved health and safety conditions, and state oversight, of private detention centers including the NWDC.

**CENTER FOR HUMAN RIGHTS**
UNIVERSITY of WASHINGTON
Henry M. Jackson School
of International Studies

**b) Why proactive disclosure applies**

Batch releases of SIRs/SENs have been requested by UWCHR and other parties many times. In more than one occasion, these documents have been released.

Requests filed by UWCHR:
1. In October 2017, UWCHR filed request # 2018-ICFO-14210 for all Significant Incident Reports created by ICE's Seattle Field Office; ICE responded that to grant us access would require third-party authorization from every person referenced in said documents; UWCHR appealed and eventually litigated the case, resulting in the release of all SIRs produced in the Seattle Area of Responsibility from January 1, 2015-October 1, 2017.
2. In January 2019, UWCHR filed request # 2019-ICFO-28410, seeking all SIRs for the 2018 calendar year; in September 2019 ICE denied the request by claiming the release of these documents would allow circumvention of law enforcement activities. UWCHR appealed this determination and prevailed upon appeal, leading ICE to remand the request for a new search under appeal # 2020-ICAP-00066 in December 2019. In January 2020, UWCHR asked for a status update on the case and was told that the request was overly burdensome because it would require a line-by-line review of thousands of documents, and asking us to narrow our request. We agreed to narrow it to only documents during that time period which contained the keywords "airport" or "ICE Air." In March 2020, ICE emailed us to notify us that "We have forwarded your e-mail to the searching unit who came back with additional feedback. They explain that the terms of "ICE Air" AND "deported" OR "removed" provides a large but manageable set of potentially responsive records. Would you be interested in limiting the scope to this string of search terms?" We responded on March 26, 2020 that we agreed to those terms. We have heard nothing since then, and all references to the case have vanished from the ICE FOIA Portal.
3. In January 2019, UWCHR filed FOIA request # 2019-ICFO-26935 seeking all SIRs reporting the use of force on removal flights since 2010; IEC denied the request under law enforcement exemptions; UWCHR filed appeal # 2019-ICAP-00347 and prevailed upon appeal; in May 2021 a single SIR was released.
4. In April 2020, UWCHR filed request # 2020-ICFO-32497 seeking all SIRs for ICE's Seattle field office created on or after March 1, 2020; in August 2020, a single SIR was released with heavy redactions. UWCHR appealed the redactions and the extensiveness of the search, and was surprised to find the case listed as "closed" in the online portal thereafter, since we never received any communication notifying us of this closure or

explaining its reasoning. We included the request in litigation, which resulted in a settlement under which 506 pages of SIRs were released.

5. In August 2020, UWCHR filed request # 2020-ICFO-81129, seeking all SIRs after January 1, 2020 in which the box marked "Covid-19" was checked; on March 1, 2021 we received an email updating us that the case had been closed, without any explanation.

6. In March 2023, UWCHR filed request # 2023-ICFO-16851 seeking all SIRs filed relating to events between February 1-3, 2023 at the Northwest Detention Center in Tacoma, during which time we were aware chemical agents had been deployed within the facility. In July 2023, we received the SIR we had sought about that specific incident.

7. In October 2023, UWCHR filed FOIA request # 2024-ICFO-02575, seeking copies of all SIRs regarding the use of force or restraints between October 15-20, 2023 in the SEA Area of Responsibility. In July 2024, UWCHR sent an email asking about the status of the case, and was told that "your request is currently in queue to be processed."

8. In March 2024, UWCHR filed request # 2024-ICFO-24004 seeking a copy of the SIR reporting the death of a detained man at the Northwest Detention Center on March 7, 2024. This was a high-profile incident reported in both local and national media, so we requested expedited processing of our request. As of July 2024, it appears on the portal that our request for expedited processing is "pending decision."

9. In March 2024, UWCHR filed FOIA request # 2024-ICFO-24871 seeking copies of SIRs filed in the Seattle Area of Responsibility on March 13-14, 2024; as of July 2024, the case's status is listed as "searching for records."

10. In March 2024, UWCHR filed FOIA request # 2024-ICFO-25726 seeking copies of SIRs filed from March 1-3, 2024, a period during which we were aware of at least one suicide attempt within the facility. The case status is currently listed as "searching for records" on ICE's Secure Release portal.

11. In March 2024, UWCHR filed FOIA request # 2024-ICFO-25732, seeking copies of SIRs filed on March 11-12, 2024, in the Seattle Area of Responsibility. The case status is currently listed as "searching for records" on ICE's Secure Release portal.

12. In June 2024, UWCHR filed FOIA request # 2024-ICFO-41122 seeking copies of the SIR reporting an act of alleged sexual abuse committed against a detained person by a guard at the Northwest Detention Center in Tacoma. The case status is currently listed as "searching for records" on ICE's Secure Release portal.

As the above shows, we have attempted to secure better results by requesting SIRs for more limited timeframes, for specific incidents, or by providing search terms, but ICE's responses have been erratic and unreliable. Furthermore, UWCHR is not the only party requesting SIRs; we are aware of multiple dozens of other requests by other parties. In summary:

**CENTER FOR HUMAN RIGHTS**
UNIVERSITY of WASHINGTON
Henry M. Jackson School
of International Studies

Requests filed by other parties

1. In April 2017, the Center for Investigative Reporting filed request # 2017-ICFO-29922 for any and all significant incident reports (SIRs), from the start of FY 2017 to present.
2. In October 2017, Andrew Free filed request 2018-ICFO-00998 seeking "all SIRs and SENs regarding any detainee or incident at the Stewart Detention Center from January 1, 2017 through the date of the agency's response to this request".
3. In March 2018, reporter Kavitha Surana from ProPublica filed a series of 6 FOIA requests (2018-ICFO-26313, 2018-ICFO-26312, 2018-ICFO-26311, 2018-ICFO-26309, 2018-ICFO-26306 and 2018-ICFO-26289) for all SIRs/SENs from a range of ICE field offices between 2016-2018.
4. In March 2018, requestor Andrew Erickson filed request 2018-ICFO-25132, seeking all Significant Incident Reports for undocumented immigrants in the Municipality of Anchorage for calendar year 2017.
5. In April 2018, reporter Kavitha Surana from ProPublica filed 2018-ICFO-28438, seeking all SIRs from the Pennsylvania field office, and 2018-ICFO-28417 and 2018-ICFO-28428, seeking all SIRs transmitted to DHS headquarter and ICE headquarters, since January 1, 2016.
6. In December 2018, reporter Maria Sacchetti of The Washington Post filed request 2019-ICFO-23823, seeking all Significant Event notifications regarding attempted suicides in detention for the past three fiscal years, and 2019-ICFO-24563, seeking all Significant Event notifications concerning a series of specific detention facilities during the same time period.
7. In March 2019, reporter Noah Lanard of Mother Jones filed 2019-ICFO-30181 and 2019-ICFO-30184, each of which sought all Significant Incident Reports produced since July 2018 at a specific detention facility.
8. In May 2015, Sarah Hughes of Durham University filed request 2019-ICFO-38325 for all Significant Events Reports produced regarding detention facilities nationwide from October 2016 to May 2019.
9. In June 2019, Andrew Free filed request 2019-ICFO-40302 for "all significant event notifications and significant incident reports created between January 1, 2019 and April 30, 2019 by the New Orleans Field Office regarding any attempt by a detained immigrant to commit suicide in civil ICE detention." This case remains under administrative appeal as of July 2024.
10. In July 2019, Jesse Franzblau of the National Immigrant Justice Center filed request 2019-ICFO-50550 for all significant incident reports regarding a specific detention facility from January 2018 to the present.

**CENTER FOR HUMAN RIGHTS**
UNIVERSITY of WASHINGTON
Henry M. Jackson School
of International Studies

11. In October 2019, Maud Beelman of Arizona State University filed 2020-ICFO-02283 seeking all significant event notifications since 2009 recording the accidental or intentional discharge of a weapon .

12. In October 2019, reporter Katherine Smyser of NBC5 Chicago filed request 2020-ICFO-01788 seeking all Significant Incident Reports from January 1, 2017 to the date of her request.

13. In July 2020, Andrew Free filed request 2020-ICFO-68105, seeking all significant incident reports regarding suicide attempts at ICE facilities in the state of Arizona since Januray 20, 2017.

14. In October 2020, Andrew Free filed request 2021-ICFO-04069 seeking all significant incident reports between January and April 2020 regarding the use of force at a specific detention facility.

15. From February-July 2021, advocacy organization Al Otro Lado filed request 2021-ICFO-24506, seeking all significant incident reports relating to a specific use of force incident at a detention facility in January 2021; and 2021-ICFO-24149 and 2021-ICFO-37886 seeking all significant incident reports relating to two different facilities since January 2019.

16. In August 2021, Andrew Free filed request 2022-ICFO-09420 and 2022-ICFO-09353, both of which sought all Significant Incident Reports regarding significant incidents in ICE detention centers from January 20, 2021 to the present.

17. In May 2022, Andrew Free filed request 2022-ICFO-15984, seeking all all Significant Incident Reports (SIR) provided by a specific ICE detention contractor to ICE.

18. In November 2022, Andrew Free filed request 2023-ICFO-03979, seeking all Significant Event Notifications (SENs) and Significant Incident Reports (SIRs) created by ERO Field Office detention staff or Immigrant ICE Health Services Corps (IHSC) staff between January 1, 2021 and the date of filing, regarding specific medical conditions in detention.

19. In February 2023, Andrew Free filed request 2023-ICFO-14194 for "all Significant Incident Reports (SIRs) documenting any attempted suicide at an Immigration and Customs Enforcement (ICE) civil detention facility in the State of Arizona between August 2020 and February 2023."

20. In February 2023, Andrew Free filed request 2023-ICFO-14008, for "All Significant Incident Reports (SIRs) or Significant Event Notifications (SENs) from GEO to ICE's ERO's Seattle Field Office regarding events at the Northwest ICE Processing Center (NWIPC) in Tacoma, Washington, or from GEO to the ICE Contracting Officer for the period beginning February 1, 2023, and ending February 16, 2023. (This request is also noteworthy because it is for the same detention facility about which we are seeking records; these are substantially the same records as those sought in UWCHR's request 2023-ICFO-16851).

CENTER FOR HUMAN RIGHTS
UNIVERSITY of WASHINGTON
Henry M. Jackson School
of International Studies

21. In May 2023, Andrew Free filed request 2023-ICFO-25568, seeking all significant event notifications and significant incident reports received by ICE Headquarters regarding ICE detention facilities between May 1, 2023, and May 10, 2023.

22. In December 2023, Andrew Free filed request 2024-ICFO-10607 seeking the significant event notification for a specific detainee death known to have occurred earlier that month in an ICE detention facility.

As this body of requests by both UWCHR and other parties makes clear, journalists, scholars, advocates and the public rely on access to SIRs/SENs as one of the avenues through which information can be gleaned about conditions in immigration detention. Questions about the conditions in which people are held while deprived of their liberty by the U.S. government are vital human rights concerns of broad public interest; FOIA is an essential tool offering limited transparency into such matters, but the agency's repeated use of delays, inconsistent responses, and summary denials of access to information have meant that litigation is often the only means to successfully access records that the law mandates be made public. This would be remedied by the proactive disclosure of certain classes of records in which there is broad public interest, sustained over time.

**3) Logs for information about use of solitary confinement in Tacoma ICE facility**

**UWCHR seeks data from ERO's official system of record to track detainees placed in segregation, covering all segregation placements, including all types of segregation, for all lengths of time, for ICE's Northwest Detention Center/Northwest ICE Processing Center in Tacoma, on a monthly basis. This data system is currently known as the SRMS (Segregation Review Management System), but should it be replaced or renamed, we request ongoing monthly disclosures from whatever system of records replaces it. We request data from all fields, including anonymized ID; gender; country of citizenship; facility; facility AOR; report type; placement date; placement reason; release date; disciplinary infraction; detailed reason; attorney of record; attorney notification; detainee request segregation; compliance with detention standards; mental illness; serious mental illness; serious disability; SMI SPI DIS Description; FO Recommendation; length of stay; suicide risk.**

a) **Research impact** of access to these documents:

According to Physicians for Human Rights (2024), "In the last five years alone, ICE has placed people in solitary confinement over 14,000 times, with an average duration of 27 days, well exceeding the 15-day threshold that United Nations human rights experts have found constitutes torture." ICE's directive of 2013 on the use of segregation (commonly known as "solitary confinement") created a tracking system to monitor detainee placements in solitary currently known as the Segregation Review Management System. As the use of solitary

11
BOX 353650   SEATTLE, WA 98195-3650
206.685.3435   UWCHR@UW.EDU
HUMANRIGHTS.WASHINGTON.EDU

Exhibit 1_011

**CENTER FOR HUMAN RIGHTS**
UNIVERSITY of WASHINGTON
Henry M. Jackson School
of International Studies

confinement in civil detention has come under increased scrutiny as the result of increasing numbers of deaths, many parties, including the UWCHR, have sought access to data from this system.

Access to records from the SRMS was essential to UWCHR research in a 2020 report on solitary confinement at the Northwest Detention Center, which found that the facility detains people longer, on average, in solitary confinement than any other dedicated ICE facility in the nation, and in our recent report about the March 2024 death of Charles Leo Daniel at the Northwest Detention Center, which found that he died in segregation in Tacoma during the second-longest stay in ICE solitary nationwide. These reports have been cited widely in the media, in discussions at the Washington state legislature, and most recently, in the U.S. Congress when raised by our Senator Patty Murray in a 2024 appropriations hearing.

b) **Why proactive disclosure applies**

As noted above, these records have been sought repeatedly by the UWCHR and other parties, clearly exceeding the required "rule of three" for proactive disclosure. In more than one occasion, these documents have been released. Note: not all of these requests use the name SRMS to refer to the system of records from which data is sought; several frame their requests as "pursuant to the 2013 ICE directive on the use of segregation" which is the initiative which first established the SRMS database as a tool to track and review the use of segregation in ICE detention. As such, whether the specific acronym SRMS is invoked or not, these requests refer to the same system of records.

Requests for these records filed by UWCHR:
1. 2018-ICFO-00515: In September 2017 we filed a request for "all records (including written documents, files, electronic communications, records or reports of any sort) describing or reviewing the placement of detainees in segregation (including both administrative and disciplinary segregation) at the Northwest Detention Center in Tacoma, WA, from September 2013 to the present. This includes both notifications of initial placement in segregation as well as regular reviews performed in cases of extended segregation. We ask that documents be redacted to protect inmate privacy." In September 2018, we were still waiting for a response from ICE, and this case was included in litigation "2019-ICLI-00003," which resulted in the release of over 100 pages of very useful documents.
2. 2024-ICFO-25462: On March 18, 2024, we filed a request for "data from the SRMS (Segregation Review Management System), ERO's official system of record to track detainees placed in segregation, covering all segregation placements, including all types of segregation, for all lengths of time, for all facilities nationwide in which people were

**CENTER FOR HUMAN RIGHTS**
UNIVERSITY of WASHINGTON
Henry M. Jackson School
of International Studies

held for ICE from September 1, 2023 to the date of processing of this request. We request data from all fields in the spreadsheet, including anonymized ID; gender; country of citizenship; facility; facility AOR; report type; placement date; placement reason; release date; disciplinary infraction; detailed reason; attorney of record; attorney notification; detainee request segregation; compliance with detention standards; mental illness; serious mental illness; serious disability; SMI SPI DIS Description; FO Recommendation; length of stay; suicide risk. This data has previously been released to multiple parties, including in 2018-ICFO-21128, 2018-ICFO-00515, and 2018-ICFO-32901, among others." On 3/27/2024, the request was acknowledged by ICE. As of 6/26/24, the status of this request was listed as "Searching for Records" on ICE's Secure Release portal.

Requests for these records filed by other parties:

On the same facility as the one we are seeking:

3. 2020-ICFO-05792 was a request filed by Seattle Times reporter Esmy Jimenez, which requests records specifically for the Northwest Detention Center (the same facility we are interested in).

On other specific facilities:

1. 2019-ICFO-28595, 2019-ICFO-28597, 2019-ICFO-28598, 2019-ICFO-28601, 2019-ICFO-28602, and 2019-ICFO-28603 were filed by Prof. César García Hernández at the University of Denver, seeking this same data, but about six different detention facilities.
2. 2017-ICFO-01806 sought this same data for all facilities in the Central district of California; it was filed by Prof. Caitlin Patler of the University of California, Davis.
3. 2016-ICFO-39830 sought this data on a national basis; it was filed by Christina Thompson of the nonprofit news organization The Marshall Project.
4. 2016-ICFO-38327 was filed by reporter Kathleen Morrissey from the San Diego Union Tribune seeking this same data for all facilities in Southern California.
5. 2018-ICFO-20094 was filed by reporter Kathleen Morrissey from the San Diego Union Tribune seeking this same data for the Otay Mesa facility.
6. 2018-ICFO-16647 was filed by Elly Yu of WABE 90.0 FM for this same data about Stewart Detention Center in Lumpkin, GA.

National in scope:
7. 2018-ICFO-35561 and 2023-ICFO-05014 were separate requests filed by Prof. Caitlin Patler at the University of California, Davis, for the same data on a national basis.

13
BOX 353650   SEATTLE, WA 98195-3650
206.685.3435   UWCHR@UW.EDU
HUMANRIGHTS.WASHINGTON.EDU

Exhibit 1_013

**CENTER FOR HUMAN RIGHTS**
UNIVERSITY of WASHINGTON
Henry M. Jackson School
of International Studies

8. 2018-ICFO-21128, 2018-ICFO-21130, 2018-ICFO-21131 were various FOIA requests filed by Rachel Kroll of the Immigration and Refugee Clinical Program at Harvard Law School, which ICE consolidated under case number 2018-ICFO-21128. All requested national data on the use of segregation. In December 2021, these resulted in litigation (Case 1:21-cv-12030, brought in federal district court in Massachusetts), the complaint of which is available [here](). The records released pursuant to this litigation formed the basis for Physicians for Human Rights' February 2024 report [Endless Nightmare: Torture and Inhuman Treatment in Solitary Confinement in U.S. Immigration Detention](); the data from SRMS was published [here]().

9. 2018-ICFO-34416 was filed by the Project on Government Oversight (POGO), resulting in the release of 6,559 records covering January 1, 2016, through May 4, 2018, on immigrant detention centers' use of solitary confinement. This data formed the basis for the report *Isolated: ICE Confines Some Detainees with Mental Illness in Solitary for Months*, published in April 2019.

10. 2019-ICFO-07455 was filed by reporter Spencer Woodman of VOX media, seeking this data on a national level (and he separately filed 2019-ICFO-07442 seeking copies of this same data that had already been released to other requestors).

11. 2020-ICFO-24804 was filed by Eunice Cho of the ACLU seeking this same data on a national level.

12. 2020-ICFO-25525 was filed by Kevin Herrera of the National Immigration Law Center, seeking this data on a national level.

13. 2020-ICFO-29570 was filed by Jesse Franzblau of the National Immigrant Justice Center, seeking this data on a national level.

Exemption of fees

As an institution of higher learning conducting research in the public interest, the UW Center for Human Rights is eligible for a fee waiver under DHS FOIA Regulations' six factors outlined in 6 CFR § 5.11(k)(2):

(1) The University of Washington Center for Human Rights submits this request pursuant to its ongoing research initiative on [Human Rights at Home](), which focuses on contemporary immigration enforcement by the United States government, especially but not exclusively in the state of Washington. As such, the focus of this request is substantially on "the operations of activities of the government."

(2) This research examines the human rights implications of government activities carried out by ICE and CBP in fulfillment of their missions as law enforcement agencies charged with immigration enforcement. All records requested are related to this objective, and therefore "likely to contribute" to an understanding of how our government operates.

(3) All of our research is shared broadly with the general public through our publications, which are available free of charge on our website and through social media. In addition,

**CENTER FOR HUMAN RIGHTS**
UNIVERSITY of WASHINGTON
Henry M. Jackson School
of International Studies

our Director and staff share insights from our research in regular public presentations, in media commentary, and when called to testify before legislative or legal bodies. As such, the disclosure of this information is indeed likely to "contribute to the understanding of the public at large, as opposed to the individual understanding of the requestor."

(4) The significant impact of our research has been recognized with multiple awards from public and private bodies. For example, we received the William O. Douglas Award from the ACLU of Washington; the organization's highest award, it is issued in recognition of "outstanding, consistent and sustained contributions to the cause of civil liberties." We have also received the Human Rights Award from the City of Seattle, and the Outstanding Public Service Award from the University of Washington. Furthermore, in a recent article, "[The public shouldn't have to sue to get public information](#)," the Editorial Board of *The Seattle Times* has publicly extolled the impact of UW Center for Human Rights about the activities of the Department of Homeland Security and U.S. Immigration and Customs Enforcement. As such, we believe it is clear that the contributions we make to public understandings of government operations are significant.

(5) and (6) As a not-for-profit research center housed at a public institution of higher learning, we do not have any commercial interest in the disclosure of information. All of our research reports are available free of charge and we derive no financial benefit from our research into government activities.

Thank you for your attention to our FOIA request. We look forward to receiving your response.

Sincerely,

*[signature]*

Angelina Snodgrass Godoy
Director